PER CURIAM.
This disciplinary proceeding by The Florida Bar against Glenn T. Harris, a member of The Florida Bar, is presently before us on complaint of The Florida Bar and report of referee. Pursuant to article XI, Rule 11.06(9)(b) of the Integration Rule of The Florida Bar, the referee’s report and record were duly filed with this Court.- No petition for review pursuant to The Florida Bar Integration Rule 11.09(1) has been filed.
Having considered the pleadings and evidence the referee found as follows:
1. Respondent, Glenn T. Harris, is a member of The Florida Bar and subject to the jurisdiction and disciplinary rules of the Supreme Court of Florida.
As to Count I
2. On January 12, 1982, pursuant to Rules 11.02(4)(b) and 11.13(3)(b), article XI, of the Integration Rule of The Florida Bar, Wilson C. Atkinson, III, then Chairman of Seventeenth Judicial Circuit Grievance Committee “D”, issued a Subpoena Duces Tecum directed to Respondent commanding him to appear before Michael D. Powell, Assistant Staff Counsel, The Florida Bar, to testify with respect to Bar file number 17D82F39, and to bring with him at that time certain trust account records.
3. Such Subpoena Duces Tecum was individually served on Respondent on January 13, 1982.
4. Respondent failed to appear at the appointed date, time, and place, as required by such Subpoena Duces Tecum.
As to Count II
5. At some time prior to March 10, 1981, Charles M. McVaden delivered to Respondent an amount of cash in excess of $2,000.00 to be held in trust by Respondent and applied as directed by Mr. McVaden. '
6. Respondent did not deposit such funds into an attorney trust account, but rather maintained them in cash in a safe deposit box in a bank in Dade or Broward County, Florida.
7. Respondent did not maintain trust account records with respect to the funds held in the safe deposit box.
8. On or about March 10, 1981, James Branch, as the undisclosed agent for Mr. McVaden, and Gladys Cox entered into a contract, whereby Ms. Cox was to sell to Mr. Branch, or his assigns, designees, or nominees, and Mr. Branch was to purchase from Ms. Cox, certain real property lying and being situated in Monroe County, Florida, to wit:
Lot 21, Block 6, Revised Tropical Atlantic Shores, First Addition, Plantation Key, as recorded in Plat Book 5, Page 83, of the Public Records of Monroe County, Florida.
Such contract called for a $2,000.00 deposit to be held in escrow by the law firm of Harris & Mulry.
9. On or about March 10, 1981, Mr. McVaden instructed Respondent to segregate $2,000.00 of the funds he had previously delivered to Respondent to be held as and for the deposit under the contract entered into between Mr. Branch and Ms. Cox.
10. On or about March 10, 1981, Respondent executed such real estate contract acknowledging receipt of the $2,000.00 deposit required by such contract.
11. Thereafter, Respondent again failed to deposit the $2,000.00 into an attorney trust account, but rather continued to maintain such $2,000.00 in cash in the safe deposit box.
12. On or about June 24, 1981, Mr. Branch and Mr. McVaden having defaulted on the real estate contract, Ms. Cox made demand upon Mr. Branch and Respondent for delivery of the deposit money.
13. When Respondent failed to deliver the deposit money, Ms. Cox sued Mr. Branch and Respondent, obtaining a final *90 judgment against Mr. Branch and Respondent for such funds on October 6, 1981, based upon a default entered October 1, 1981.
14. Respondent failed, and continues to fail, to deliver to Ms. Cox the funds he held in trust as the deposit under the real estate contract, despite Mr. McVaden having no objection to their payment.
As to Count III
15. Respondent has converted to his own use that part of the cash received from Mr. McVaden which was to be held in trust as and for the deposit under such real estate contract entered into between Mr. Branch and Ms. Cox.
As to Count IV
16. After being served with the complaint in Ms. Cox’s suit for the deposit money, Mr. Branch consulted with Respondent, who informed Mr. Branch that he would take care of the matter.
17. Based upon Respondent’s representations, Mr. Branch did not defend the suit by Ms. Cox.
18. Respondent did not take any action in response to Ms. Cox’s action either on behalf of Mr. Branch or himself.
As to Count V
19. At some time prior to November 4,1980, Joseph Robinson and Rose Robinson, his wife, retained Respondent to represent them in the purchase of certain real property lying and being situate in Broward County, Florida, to wit:
The Condominium Parcel known as Apartment 320 in Water Bridge Condominium 7, according to the Declaration of Condominium thereof, recorded in Official Records Book 8639, Pages 836 through 044 of the Public Records of Broward County, Florida.
As part of such representation Respondent was to provide to Mr', and Mrs. Robinson a title insurance policy on such real property.
20. On or about November 4,1980, the closing of such transaction took place at the office of the seller’s attorney. At such closing, Mr. and Mrs. Robinson, pursuant to Respondent’s instructions, delivered to the seller’s attorney a cashier’s check in the amount of $48,271.20, which was to be first applied to the cash to close of $47,602.20 and the remainder disbursed to Respondent.
21. A portion of the funds to be disbursed to Respondent by the seller’s attorney was to be used by Respondent to pay the premium on the title insurance policy Respondent was to obtain for Mr. and Mrs. Robinson.
22. On or at sometime after November 4,1980, the seller’s attorney delivered to Respondent the sum of $669.00, such being the difference between the amount tendered by Mr. and Mrs. Robinson and the cash necessary to close the real property transaction. Respondent failed to notify Mr. and Mrs. Robinson of the receipt of such funds.
23. Despite numerous demands, Respondent failed to provide Mr. and Mrs. Robinson with a title insurance policy for the real property they purchased. Mr. and Mrs. Robinson eventually obtained such title insurance policy through another attorney.
24. Despite several demands, Respondent failed, and continues to fail, to return to Mr. and Mrs. Robinson that portion of the funds indirectly received by Respondent from Mr. and Mrs. Robinson which was to be applied to the premium for the title insurance policy to be purchased for Mr. and Mrs. Robinson.
As to Count VI
25. On or about November- 6, 1981, Respondent issued to Steak & Ale, a restaurant located in Tamarac, Florida, his personal check, number 144, in the amount of $200.00, drawn upon Capital Bank, for which respondent received in return $200.00 in cash.
26. Such check, number 144, was deposited by Steak & Ale in its business account, but was subsequently returned *91 to Steak & Ale because there were insufficient funds in Respondent’s account to pay such check.
27. Despite demand, Respondent failed, and continues to fail, to redeem such check, number 144.
28. On or about November 11, 1981, Respondent issued to Steak & Ale his personal check, number 149, in the amount of $300.00, drawn upon Capital Bank, for which Respondent received in return $300.00 in cash.
29. Such check, number 149, was deposited by Steak & Ale in its business account, but was subsequently returned to Steak & Ale because there were insufficient funds in Respondent’s account to pay such check.
30. Despite demand, Respondent failed, and continues to fail, to redeem such check, number 149.
31. On or about November 17, 1981, Respondent issued to Steak & Ale his personal check, number 150, in the amount of $300.00, drawn upon Capital Bank, for which Respondent received in return $300.00 in cash.
32. Such check, number 150, was deposited by Steak & Ale in its business account, but was subsequently returned to Steak & Ale because there were insufficient funds in Respondent’s account to pay such check.
33. Despite demand, Respondent failed, and continues to fail, to redeem such check, number 150.
As to Count VII
34. Sometime during late July or early August, 1981, Doris Hernandez retained Respondent to represent her in an action filed against her by Parkway General Hospital. At that time, Mrs. Hernandez delivered to Respondent the summons and complaint seived upon her in that action.
35. Several times before the final hearing date, which was set for August 31, 1981, Mrs. Hernandez attempted to contact Respondent concerning her case, but was unsuccessful.
36. On or about August 31, 1981, the final hearing was held in Mrs. Hernandez’s case. Respondent failed to appear, as did Mrs. Hernandez, she being unsure as to the date, time, and place of the hearing due to Respondent having her papers.
37. At some time subsequent to the scheduled hearing date in her case, Mrs. Hernandez was able to speak with Respondent, who told her he would take care of the matter.
38. During November, 1981, a default judgment was entered against Mrs. Hernandez.
The referee recommends that respondent be found guilty of misconduct justifying disciplinary measures and recommends that respondent be disbarred from the practice of law in the State of Florida.
Having carefully reviewed the record, we approve the findings and recommendations of the referee.
Accordingly respondent, Glenn T. Harris, is hereby disbarred from the practice of law in the State of Florida effective August 29, 1983, thereby giving respondent 30 days to close out his practice and take the necessary steps to protect his clients. Respondent shall not accept any new business.
Costs in the amount of $1,473.85 are hereby taxed against respondent.
It is so ordered.
ADKINS, Acting C.J., and BOYD, OVERTON, MCDONALD and EHRLICH, JJ., concur.